**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ALPINE COUNTRY CLUB,** | Civ. No. 23-00043 (KM) (MAH) |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **SOMPO AMERICA INSURANCE COMPANY,** | |
| **Defendant.** | |

**KEVIN MCNULTY, U.S.D.J.:**

This action arises out of a commercial property insurance policy issued by defendant Sompo America Insurance Company ("Sompo") to plaintiff Alpine Country Club ("Alpine"). After suffering property damage allegedly caused by Hurricane Ida in September 2021, Alpine sought coverage from Sompo for its losses, which totaled nearly $10 million. In response to Alpine's claim, Sompo asserted that the property damage was caused by "flood," rather than "rain or water," limiting Alpine to only $500,000 in coverage under the policy. Sompo then conducted a year-long investigation of Alpine's claim, subsequent to which Sompo reiterated its position that the $500,000 flood sublimit applies.

Alpine seeks a declaratory judgment that Sompo must provide full coverage for the losses Alpine suffered as a result of Hurricane Ida, as well as damages for breach of contract and breach of the implied duty of good faith and fair dealing. Sompo now moves to dismiss the complaint on the ground that this lawsuit is premature under the terms of the insurance policy. According to Sompo, the policy requires Alpine to fully comply with its provisions prior to filing a lawsuit, and that Alpine has failed to do so, largely

1

because its representatives have not yet submitted to an oral examination. For the reasons set forth below, Sompo's motion to dismiss (DE 4) is **DENIED**.[1]

## I.      Background

The complaint alleges the following. Sompo sold to Alpine a commercial property policy ("the Policy") that "insures against all risk of direct physical loss or damage" occurring during the period from July 1, 2021, through July 1, 2022. (Compl. ¶¶7-8.) The Policy identifies specifically as a covered peril damage arising from a "Named Storm," including a hurricane. (*Id.* ¶9.) The Policy provides that "Named storm shall include direct physical loss or damage including but not limited to . . . . Rain or water (not constituting a flood), whether the rain or water is driven by wind or not, that enters a building or structure insured under this Policy." (*Id.*) With respect to damage caused by "flood," the Policy contains a $500,000 sublimit. (*Id.* ¶15.)

On September 1, 2021, Hurricane Ida—a category 4 storm—hit New Jersey. (Compl. ¶11.) The storm brought substantial rain and high winds traveling in a north and northeast direction. (*Id.*) As a result of rain and/or water produced by Ida, Alpine suffered widespread damage to its insured buildings and grounds. (*Id.* ¶12.) Alpine has incurred nearly $10 million in costs arising from this damage and related business interruption. (*Id.* ¶13.)

On or about September 2, 2021, Alpine reported its Ida-related damage to Sompo. (Compl. ¶14.) Alpine subsequently received a letter dated October 8, 2021, from Sompo's agent Sedgwick. (*Id.* ¶15.) The letter conveyed Sompo's conclusion that it need only pay $500,000 towards Alpine's property damage because the damage arose entirely from a "flood" and thereby triggers the

---

[1]      Certain citations to the record will be abbreviated as follows:

DE = Docket entry in this matter
Compl. = Civil complaint filed by Alpine against Sompo (DE 1)
Mot. = Sompo's memorandum of law in support of its motion to dismiss (DE 4-1)
Policy = Sompo's commercial property policy issued to Alpine (DE 4-3 at 24)

$500,000 sublimit. (*Id.*) On November 3, 2021, Sompo issued a $500,000 payment to Alpine. (*Id.* ¶16.)

Over the course of the next 10 months, Sompo conducted what Alpine refers to as a "sham" investigation of Alpine's claim. (Compl. ¶17.) The investigation included three visits to Alpine's property, which forced Alpine to expend resources on counsel and an engineer to cooperate with Sompo. (*Id.*) According to Alpine, the investigation served no purpose other than to delay the resolution of the parties' dispute. (*Id.* ¶18.)

On July 19, 2022, Sompo issued another coverage letter to Alpine in which Sompo articulated the same position expressed in its first communications with Alpine concerning the claim: that because the damage to Alpine's property was caused entirely by "flood," the $500,000 sublimit applies. (Compl. ¶19.) In addition, Sompo asked Alpine to provide additional documentation and to produce witnesses to testify under oath about such subjects as "[t]he direction of the wind/rain . . . during the storm." (*Id.* ¶20.)

In light of dwindling resources and the expense of compliance with Sompo's investigation demands, Alpine filed a complaint in this Court on September 28, 2022. (Compl. ¶21.) Counsel for Alpine and Sompo thereafter spoke about the possibility of submitting their coverage dispute to mediation. (*Id.* ¶22.) Based on statements made by Sompo's counsel which indicated that mediation would prove fruitful, Alpine agreed to dismiss its action without prejudice and costs. (*Id.* ¶24.) The parties proceeded to mediation following dismissal of the action on November 18, 2022. (*Id.* ¶25.) After mediation proved unsuccessful, Alpine refiled this action on January 5, 2023. (*Id.* ¶26.)

On January 31, 2023, Sompo filed a motion to dismiss the complaint without prejudice pursuant to Fed. R. Civ. P. 12(b)(6). (DE 4.) The motion is now fully briefed and ripe for a decision.

## II.     Legal standards

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The defendant, as the moving party,

bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n. 9 (3d Cir. 2011). For the purposes of resolving a Rule 12(b)(6) motion to dismiss, the court must accept the facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

The Federal Rules of Civil Procedure do not require that a complaint contain detailed factual allegations. *See* Fed. R. Civ. P. 8(a). Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief.") (Citation omitted). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570.

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citing *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985)). "However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *In re Burlington, supra* (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). *See also Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.") This rule seeks to prevent the situation in which a plaintiff

is able to maintain a claim by "extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement" does not support the claim. *In re Burlington, supra.*

### III.   Discussion

The Policy, which Sompo has attached as an exhibit to its motion to dismiss, is integral to Alpine's complaint. I will therefore consider the Policy in its entirety—beyond the select provisions cited in the complaint—in resolving the motion to dismiss.

The Policy requires, in pertinent part, that Alpine "[c]ooperate with [Sompo] in all aspects of any claim and provide [Sompo] with any additional information that [Sompo] requires." (Policy 41.) Additionally, the Policy requires that Alpine "[s]ubmit to examination under oath at such times as [Sompo] reasonably may require concerning any matter relating to this insurance or any claim." (*Id.*) The Policy indicates that "[n]o suit, action or proceeding for the recovery of any claim under this Policy shall be sustainable in any court of law or equity unless . . . [Alpine has] fully complied with all provisions of this policy." (*Id.* 42-43.)

Sompo argues that Alpine may not sue for failure to provide coverage under the Policy as Alpine has not complied with Sompo's request for reinspection and examination under oath. According to Sompo, because Alpine has not satisfied these conditions precedent to suit, Alpine's claim must be dismissed as premature. (Mot. 8-14.)

In New Jersey, "[c]ooperation clauses generally have been held to be material provisions of insurance policies with compliance therewith a condition precedent to the insured's liability and a breach thereof a possible basis for forfeiture of coverage." *Selective Ins. Co. v. Mauro*, No. A-0513-04T5, 2005 WL 3691162, at *7 (N.J. Super. Ct. App. Div. Jan. 23, 2006). The requirement to submit to an examination under oath ("EUO"), in particular, "is part of the insured's contractually imposed obligation to cooperate with the insurer." *Id.*

Importantly, however, it is a "general principle in New Jersey law that an EUO provision is subject to a reasonableness requirement." *Formosa Plastics Corp. v. ACE Am. Ins. Co.*, No. CV 06-5055 (HAA), 2008 WL 11518767, at \*19 (D.N.J. Sept. 22, 2008). The Policy itself expressly incorporates such a requirement, as it provides that Alpine need only comply with Sompo's EUO request to the extent that it is "reasonably" required. (Policy 41.) To put it differently, if not very charitably, the insurer cannot simply deem the investigation incomplete unless and until a claim for coverage is defeated.

Whether Sompo's EUO request was reasonable under the circumstances of this case presents a question of fact. *See Ace Eur. Grp. v. Sappe*, No. CIV.A. 08-412 JLL, 2012 WL 3638690, at \*5 (D.N.J. Aug. 21, 2012) ("The plain meaning of the phrase '[a]s often as we reasonably require' inherently involves a fact-based inquiry into what is reasonable under the particular circumstances involved.") Construing the allegations of the complaint in favor of Alpine, as I must do at this stage, it is plausible that Sompo's request was unreasonable, as Sompo had already gathered a significant amount of information from Alpine over the course of 10 months. This information-gathering allegedly included three separate visits to Alpine's property and forced Alpine to hire an engineer in order to comply with Sompo's inquiries. (Compl. ¶17.) And the requested EUOs seem to be directed at weather-related issues that perhaps would not be especially illuminated by the testimony of Alpine's employees.

In *Formosa*, the defendant-insurer similarly argued that the plaintiff's lawsuit for coverage under its property insurance policy must be dismissed for failure to comply with the insurer's EUO request. 2008 WL 11518767, at \*1. On summary judgment, the Court rejected the defendant's argument, concluding that "a genuine dispute of material fact exists as to the reasonableness of the Insurers' demand for an EUO." *Id.* at \*19. The Court noted that the plaintiff had cooperated significantly with the defendant-insurer's investigation of the claim, including by engaging in "extended

discussions, meetings, and document exchanges with the Insurers." *Id.* In light of this cooperation, the Court held, a reasonable jury could find that the EUO request was unreasonable. *Id.*

The present motion is not a summary judgment motion. Both parties, it is true, have attached to their briefs items of correspondence that they exchanged during the course of Sompo's investigation. I am constrained here to consider the complaint's well-pleaded allegations (and the Policy, incorporated by reference) only. Although the complaint refers to some of this correspondence, it does not do so in detail, and the complaint is not "based on" these extrinsic documents, as is required for the documents to be considered on a motion to dismiss. *See In re Burlington*, 114 F.3d at 1426. It is on the complaint alone that I base my conclusion that the reasonableness of Sompo's EUO request presents a debatable factual question.[2]

The case law on which Sompo relies does not support a contrary conclusion. In *Lighthouse Point Marina & Yacht Club, LLC v. Int'l Marine Underwriters*, the Court held, after discovery and on a motion for summary judgment, that the insured's claim lacked merit because it had failed to comply with the defendant-insurer's request to reinspect the property. No. CIV. 14-2974 WHW CLW, 2014 WL 6065828, at *3-4 (D.N.J. Nov. 13, 2014). The Court reasoned that "[w]hile Plaintiff allowed an initial inspection, it was . . . reasonable for Defendant to ask to reinspect after Plaintiff made a claim for more than 300 times the original assessment." *Id.* Similarly, in *DiFrancisco v. Chubb Ins. Co.,* the Court affirmed summary judgment in favor of the insurer where the insured failed to provide necessary corporate books and records to the insurer. 283 N.J. Super. 601, 612 (App. Div. 1995). The Court concluded that the plaintiff's lack of cooperation constituted a material breach of the conditions of the insurance policy because the demand for documents was "reasonable and specific" in light of the insurer's suspicion that the plaintiff

---

[2]     Because I find it unlikely that the correspondence, if I considered it, would require a judgment for either side, I do not exercise my discretion to convert the motion to dismiss into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d).

had committed fraud. *Id.*  In both cases, the Court explicitly analyzed the reasonableness of the insurer's request, on a full factual record, before holding on summary judgment that the plaintiff's lack of cooperation barred the suit.

In *AAA Mid-Atl. Ins. Co. of New Jersey v. Benson*, the Court vacated an arbitration award where the arbitrator failed to even consider whether the insurance claimants had violated their contractual duty to comply with the insurer's EUO requests. 2002 WL 32829048, at *7, 9 (N.J. Super. Ct. Law Div. Oct. 23, 2002). The insurer suspected that the claims at issue, which were made under personal injury protection policies following an automobile accident, were not legitimate. *Id.* at *1. The Court observed that automobile insurance providers have a statutory "obligation to investigate potentially suspect claims, which includes the taking of examinations under oath." *Id.* at *6. Although the Court did not make an explicit reasonableness assessment, its analysis indicates that it considered the requests for examinations to be reasonable.

In this case, the complaint does not establish that Sompo's EUO request was reasonable in light of a suspicion that Alpine's coverage claim was fraudulent, as was the case in *DiFrancisco* and *AAA*. Nor does it establish that the request was reasonable because Alpine made a claim for an amount substantially higher than the original assessment after Sompo had already investigated, as was the case in *Lighthouse*. Rather, Sompo has conceded that it owes coverage for Alpine's Ida-related damage; the parties dispute the extent of that coverage in light of the policy language and the specific nature of the damage that occurred. That dispute has been ongoing since before Sompo even began its investigation.

Sompo's request may have been reasonable regardless, as the issue of whether the damage was caused by rain or flood may require significant investigation. At this stage, however, I must draw all reasonable inferences in

favor of Alpine. I will therefore deny the motion to dismiss for failure to state a claim.[3]

### IV.     Conclusion

For the reasons set forth above, the motion to dismiss (DE 4) is **DENIED**. An appropriate order will issue.

Dated: August 2, 2023

/s/ Kevin McNulty

_____

**KEVIN MCNULTY**
**United States District Judge**

---

[3]     I cannot refrain from observing that the dispute here may signify little in the end. In this action, the defendant may avail itself of the full range of discovery devices, including depositions under oath, to obtain the information it seeks.