**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ALPINE COUNTRY CLUB,** | **Civil Action No. 23-43 (CCC) (MAH)** |
| **Plaintiff,** | |
| **v.** | |
| **SOMPO AMERICA INSURANCE COMPANY,** | **OPINION** |
| **Defendant** | |

## I.   INTRODUCTION

This matter comes before the Court on Alpine Country Club's ("Plaintiff") motion to file an amended Complaint.  Mot. to Amend, Mar. 19, 2024, D.E. 76.  Sompo America Insurance Company ("Defendant") opposes the motion.  Opp'n, Apr. 1, 2024, D.E. 78.  Plaintiff filed a reply in further support of its motion.  Reply, Apr. 8, 2024, D.E. 84.  The Court has carefully considered the parties' submissions without oral argument pursuant to Fed. R. Civ. P. 78 and Local Civ. R. 78.1(b).  For the reasons set forth below, Plaintiff's motion to amend is **denied**.

## II.   BACKGROUND[1]

This action arises out of a commercial property insurance policy (the "Policy") dispute between the policyholder, Plaintiff, and the insurer, Defendant, regarding damages sustained to Plaintiff's property.  The Policy insures Plaintiff against "'all risk of direct physical loss or damage to covered property' unless specifically and unambiguously excluded from the Policy."  Policy,

---

[1] The Court writes primarily for the parties and sets forth only the pertinent allegations relevant to this motion.

Ex. C, D.E. 76-5, at 24.  The Policy provides approximately $40 million in liability limits for loss arising from a "Named Storm" and a $500,000 sublimit[2] for loss arising from a "Flood."[3]  *Id.* at 16.

Plaintiff alleges that, on September 1, 2021, historic rainfall from Tropical Storm Ida damaged Plaintiff's clubhouse and several outdoor facilities.  Compl., Jan. 5, 2023, D.E. 1, at ¶¶ 11-12.  Plaintiff filed a claim with Defendant on September 2, 2021, seeking approximately $10 million in insurance coverage for "cleanup, repair, and business interruption costs."  *Id.* at ¶¶ 13-14.

Defendant's independent adjuster visited Plaintiff's property on September 7, 2021.  Opp'n, D.E. 78, at 4.  Defendant also retained Halliwell Engineering Associates, Inc. ("HEA") to investigate the cause of Plaintiff's property damage.  *Id.*  In total, Defendant and HEA prepared three separate reports assessing Plaintiff's property damage: (1) an October 22, 2021 draft report ("First Report"); (2) an October 26, 2021 report ("Second Report"); and (3) a June 17, 2022 report ("Supplemental Report").  HEA junior engineer Jacqueline Kerstetter first "inspected Plaintiff's property 29 days after the [Date of Loss ('DOL')] on September 30, 2021, and again on October 13, 2021."  Opp'n, D.E. 78, at ¶ 12.  Ms. Kerstetter "prepared a draft report of her findings" in the

---

[2] A sublimit refers to "a liability limit in an insurance policy for a particular risk that is below the aggregate liability limit of the policy."  *Sublimit,* MERRIAM-WEBSTER DICTIONARY (11th ed. 2003).

[3] The Policy defines "Named Storm" as "a storm that, at any time, has been declared … to be a Hurricane, Typhoon, Tropical Cyclone, Tropical Storm, or Tropical Depression.  Named storm shall include direct physical loss or damage including but not limited to … rain or water (not constituting a flood), whether the rain or water is driven by wind or not, that enters a building or structure insured under this Policy."  Policy, Ex. C, D.E. 76-5, at 77.  The Policy defines "Flood" as "whether natural or manmade, flood waters, rapid accumulation of rain or water, surface water, waves, tide, tidal water … Physical loss or damage from flood associated with a storm or weather disturbance whether or not identified by name by any meteorological authority, is considered to be flood within the terms of this Policy."  *Id.* at 75.

First Report, which was signed by senior HEA engineer Don Leffert.  *Id.*  The First Report concluded that Plaintiff's water damage resulted from a Named Storm that displaced the fire suppression system line in the clubhouse basement.  First Report, Ex. A, D.E. 57-1, at 8-9.  Ms. Kerstetter found that

> the force of flowing water through the vent displaced the riser pipes of the fire suppression system below the vent, causing joints in the pipes to separate.  The water from the fire suppression system was then allowed to flow through these separated pipes and into the basement, adding to the water volume.

*Id*.  Based on these findings, HEA concluded that the water damage was caused by rain or water that entered Plaintiff's clubhouse from the fire suppression pipes.  *Id*.  As a result, HEA determined that Plaintiff's property damage constituted a Named Storm.  Policy, Ex. C, D.E. 76-5, at 77. Therefore, the First Report concluded that Plaintiff was entitled to coverage within the Policy's limits.  First Report, Ex. A, D.E. 57-1, at 8-9.

But after receiving the First Report, Defendant's claim specialist, Rachel Daniels, requested additional information regarding the First Report's reference to water flowing from the fire suppression system.  Sompo's Claim Specialist Email to HEA, Ex. A, D.E. 78-1 (Oct. 22, 2021).   Upon internal review, HEA determined that the pipe Ms. Kerstetter "identified [in the First Report] was not part of the fire suppression system but was instead part of the bypass line." HEA's Response Email, Ex. B, D.E. 78-2 (Oct. 25, 2021).  HEA found that "the force of flowing water through the vent [did not displace the riser pipes of the fire suppression system as originally thought but instead] had separated the copper bypass water lines for the domestic water system." As a result, water rapidly accumulated in Plaintiff's basement, thereby constituting a "Flood" under the Policy.  Second Report, Ex. B, D.E. 57-2, at 9; Policy, Ex. C, D.E. 76-5, at 75.  HEA also noted the position of the bypass valves, explaining that "under normal operations, the valves to the [bypass line pipes] would be shut off; therefore, no water would have flowed out of the

disconnected pipes on the [DOL]."  Second Report, Ex. B, D.E. 57-2, at 8-9.  Based on the position

of the bypass pipes and valves, photographs, weather data, drainage plans, analysis of rainfall, and

their knowledge of construction, HEA concluded that "the proximate cause of the observed

damages to the subject building was due to overflowing water from the drainage pond for the storm

water drainage system of the golf course to the east of the subject building."  *Id.* at 8.  Accordingly,

Defendant and HEA issued a revised Second Report finding that a Flood, not a Named Storm, was

the source of Plaintiff's water damage.  *Id.*  Defendant shared its formal position with Plaintiff on

November 15, 2021, and issued Plaintiff a $500,000 payment on November 31, 2021.  Compl.,

Jan. 5, 2023, D.E. 1, at ¶ 15.

Over the next ten months, Defendant continued to investigate Plaintiff's claim in what

Plaintiff characterizes as a "'sham' investigation."  *Id.* ¶ 17.  Defendant examined Plaintiff's

property on three separate occasions, allegedly forcing Plaintiff to expend valuable time, funds,

and resources to accommodate the investigation.  *Id.*  At the conclusion of this investigation,

Defendant sent the Supplemental Report to Plaintiff on July 19, 2022.  The Supplemental Report

confirmed Defendant's earlier findings that the loss arose from a flood, and thereby Plaintiff was

limited to $500,000 Flood coverage under the Policy.  Supplemental Report, Ex. B, D.E. 24-2, at

12.

Plaintiff filed a Complaint on September 28, 2022 ("Earlier Action").  Compl., Civ. No.

22-5754, D.E. 1.  The parties then agreed to participate in mediation, and Plaintiff dismissed the

Earlier Action without prejudice.  Voluntary Dismissal, Civ. No. 22-5754, D.E. 4.  After

unsuccessful attempts at mediation, Plaintiff filed this action on January 5, 2023.  Plaintiff seeks

the following: (1) a declaratory judgment obligating Defendant to pay Plaintiff's full damages

stemming from Named Storm Ida; (2) damages for breach of contract; and (3) damages for breach of duty of good faith and fair dealing.  Compl., Jan. 5, 2023, D.E. 1, at ¶¶ 27-47.

On January 31, 2023, Defendant moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  Def.'s Mot. to Dismiss, D.E. 4.  On March 30, 2023, the Court issued a Pretrial Scheduling Order ("PTSO").  *See generally* PTSO, D.E. 21.  The PTSO ordered fact discovery to remain open through October 10, 2023, and any motion to amend the pleadings be filed by April 17, 2023.[4]  *Id.* at ¶¶ 2, 12.  On August 2, 2023, the District Court denied Defendant's motion to dismiss.  Order, D.E. 27.  On August 16, 2023, Defendant filed its Answer.  Answer, D.E. 32.  On November 15, 2023, Plaintiff sought leave to file a motion to amend its Complaint.  Ltr. Req. Leave to Amend, D.E. 57.  On January 31, 2024, this Court granted Plaintiff leave to move to amend.  Order, D.E. 68; Order, D.E. 70.

Plaintiff filed the present motion to amend its Complaint on March 19, 2024.  *See generally* Mot. to Amend, D.E. 76.  Plaintiff seeks to add claims against Defendant for fraudulent concealment and equitable estoppel.  *Id.*  Specifically, the proposed amended pleading would allege that Defendant deliberately concealed its First Report, which found that Plaintiff was entitled to Named Storm coverage, and altered its conclusion via the Second Report, to avoid paying Plaintiff $10 million.  Br. in Supp., D.E. 76-1, at 9.  It also would allege that Defendant intentionally concealed its First Report from Plaintiff in bad faith.  *Id.* at 9-10.  Plaintiff contends that Defendant had a duty to discuss report discrepancies with Plaintiff "to determine whether the

---

[4] The Court amended the PTSO on October 2, 2023, and again on February 13, 2024.  Am. Scheduling Order, D.E. 46, at ¶ 5; Second Am. Scheduling Order, D.E. 72, at ¶ 1.  The October 2, 2023 scheduling order extended the fact discovery deadline to December 9, 2023.  Am. Scheduling Order, D.E. 46, at ¶ 5.  The February 13, 2024 scheduling order extended the fact discovery deadline to April 30, 2024.  Second Am. Scheduling Order, D.E. 72, at ¶ 1.  At no point in time did either party move to extend the deadline to amend.  *See generally* Am. Scheduling Order, D.E. 46; Second Am. Scheduling Order, D.E. 72.

insurer and its policyholder could arrive, together and in good faith, at an accurate causation and coverage determination." *Id.*

In opposition to the motion to amend, Defendant argues that Plaintiff has failed to show good cause to amend beyond the deadline set forth in the Pretrial Scheduling Order, April 17, 2023, and that Plaintiff's fraudulent concealment and equitable estoppel claims are futile. Opp'n, D.E. 78, at 10-12. In reply, Plaintiff asserts that it demonstrates good cause, and argues that there is no undue delay, no bad faith, no unfair prejudice, no repeated failures to cure deficiencies, and no futility of amendment.[5] Reply, D.E. 84, at 3.

## III. ANALYSIS

"The threshold issue in resolving a motion to amend is the determination of whether the motion is governed by Rule 15 or Rule 16 of the Federal Rules of Civil Procedure." *Karlo v. Pittsburgh Glass Works, LLC,* No. 10-1238, 2011 WL 5170445, at *2 (W.D. Pa. Oct. 31, 2011). Rule 15(a)(2) mandates that "leave to amend the pleadings should be 'freely granted when justice so requires.'" Fed. R. Civ. P. 15(a)(2). This liberal pleading standard comprises a wide array of equitable factors ("*Foman* factors"). *Arthur v. Maersk,* 424 F.3d 196, 203 (3d. Cir. 2006) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)). Courts should deny leave "only when these factors suggest that amendment would be 'unjust.'" *Id.*

However, Rule 16(b)(4), imposes a more stringent pleading standard: parties must exhibit "good cause" for amending after the PTSO deadline. *Karlo,* 2011 WL 5170445, at *2. Good

---

[5] On May 20, 2024, Plaintiff filed a letter in further support of its motion to amend. Ltr. to Ct., D.E. 106. On May 28, 2024, Defendant filed a letter responding to Plaintiff's May 20, 2024 letter. Ltr. to Ct., D.E. 108. Although the parties did not seek or obtain leave to file these letters, the Court nonetheless has carefully considered all of the parties' papers in resolving this motion. However, the parties are forewarned that in the future, the Court will not consider any submissions that are filed without advance leave of the Court to do so.

cause requires due diligence by the moving party. *Id.* (citing Wright, Miller, & Kane, Federal Practice and Procedure, 6A Fed. Prac. & Proc. Civ. § 1522.2 (3d. ed. 2010)); *see Chancellor v. Pottsgrove Sch. Dist.,* 501 F. Supp. 2d 695, 701 (E.D. Pa. 2007) (citing *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir. 1992)) (if the moving party did not exercise diligence, there is no good cause to amend the pleading). The movant bears the burden of demonstrating good cause. *Graham v. Progressive Direct Ins. Co.,* 271 F.R.D. 112, 119 (W.D. Pa. 2010).

The Third Circuit has consistently held that a party seeking leave to amend the pleadings after the Court's PTSO deadline must first satisfy Rule 16(b)(4), then Rule 15(a)(2). *See Premier Comp Sol., LLC v. UPMC,* 970 F.3d 316, 319 (3d. Cir. 2020) ("A party must meet th[e heightened] standard [of Rule 16(b)(4)] before a district court considers whether the party also meets Rule 15(a)'s more liberal standard."); *see also Price v. Trans Union,* 737 F. Supp. 2d 276, 279 (E.D. Pa. 2010) ("where a party seeks to amend its pleadings after a deadline set by court order, the decision whether to allow the amendment is controlled by Rule 16(b)"); *see also Componentone, LLC v. Componentart, Inc.*, No. 051122, 2007 WL 2580635, at *2 (W.D. Pa. Aug. 16, 2007) ("once the pretrial scheduling order's deadline for filing motions to amend the pleadings has passed, a party must, under Rule 16(b), demonstrate 'good cause' for its failure to comply with the scheduling order before the trial court can consider, under Rule 15(a), the party's motion to amend its pleading"). If the party does not demonstrate good cause under Rule 16(b)(4), then the court need not consider Rule 15(a)(2). *Nasa Machine Tools Inc. v. FAMA Tech. Inc.,* No. 182872, 2019 WL 7207503, at *2 (D.N.J. Dec. 27, 2019).

### A. Rule 16

Rule 16(b)(4) governs when a party wishes to amend a complaint after the deadline set forth in the pretrial scheduling order has expired.  *Banks v. City of Phila.,* 309 F.R.D. 287, 293 (E.D. Pa. 2015).  The purpose of Rule 16 is to "maximize the efficiency of the court system" by "actively manag[ing] the timetable of case preparation so as to expedite the speedy disposition of cases."  *Newton v. A.C. & S., Inc.,* 918 F.2d 1121, 1129 (3d. Cir. 1990).  Here, the pretrial scheduling order required the parties to seek leave to amend by April 17, 2023.  PTSO, Mar. 30, 2023, D.E. 21, at ¶ 12.  The Court has not extended this deadline, nor did either party seek to extend the deadline to amend despite having twice sought leave to extend the close of discovery.  Am. Scheduling Order, D.E. 46; Second Am. Scheduling Order, D.E. 72.  Because Plaintiff moved for leave to file and serve an amended Complaint on March 19, 2024, nearly twelve months after the deadline set forth in PTSO, this Court must analyze Plaintiff's motion under the good cause standard of Rule 16(b)(4).

To prevail under Rule 16(b)(4), Plaintiff "must demonstrate good cause for failure to comply with the scheduling order."  Fed. R. of Civ. P. 16(b)(4).  Good cause "focuses on the diligence of the party seeking the modification of the scheduling order."  *Chancellor,* 501 F. Supp. 2d at 701.  "If the party was not diligent, there is no 'good cause' for modifying the [PTSO] and allowing the party to file a motion to amend its pleading."  *Price,* 737 F. Supp. 2d at 279-80 (citing *Chancellor,* 501 F. Supp. 2d at 701).  Diligence may be lacking if the movant was "aware of the facts that would lead it to amend but failed to act on it."  *Roggio v. FBI,* No. 08-4991, 2011 WL 3625042, at *5 (D.N.J. Aug. 17, 2011).

The Court concludes that Plaintiff's motion fails under Rule 16(b)(4) because it does not demonstrate diligence.  A movant demonstrates diligence if it "show[s] that their delay in filing

the motion to amend stemmed from 'any mistake, excusable neglect, or any other factor which might understandably account for failure to undertake to comply with the Scheduling Order.'" *Fermin v. Toyota Material Handling, U.S.A., Inc.,* No. 10-3755, 2012 WL 1393074, at *3 (D.N.J. Apr. 23, 2012) (quoting *Phillips v. Greben,* No. 04-5590, 2006 WL 3069475, at *6 (D.N.J. Oct. 27, 2006)).[6]

### 1.  Mistake

The record provides no indication that Plaintiff's delay in seeking leave to amend stems from a mistake.  *See Venuto v. Atlantis Motor Grp., LLC,* No. 17-3363, 2020 WL 998945, at *4 (D.N.J. Mar. 2, 2020) (mistakes constitute good cause if a movant accidentally errs when drafting or proofreading the amended complaint).  Nor does Plaintiff assert that its delay in seeking leave to amend is due to an error.  *See Schreck v. Walmart,* No. 08-5729, 2009 WL 4800225, at *2 (D.N.J. Dec. 8, 2009) (finding good cause under Rule 16(b)(4) since the motion to amend was based on an "inadvertent mistake" in drafting).  Instead, Plaintiff contends that it intentionally waited to file its motion to amend until after the March 21, 2024 settlement conference.  Reply, D.E. 84, at 4.

### 2.  Excusable Neglect

The Court also concludes that Plaintiff's untimely motion does not constitute excusable neglect.  Excusable neglect requires "a demonstration of good faith on the part of the [movant] and some reasonable basis for noncompliance within the time specified in the rules."  *In Re Tuttle,* No. 20-2523, 2023 WL 2263385 (D.N.J. Feb 28, 2023); *Dominic v. Hess Oil V.I. Corp,* 841 F.2d 513, 517 (3d. Cir. 1988).  Neither element is present in this case for the reasons set forth below.

---

[6]  The Court notes that Plaintiff does not specifically address all factors in either its moving or reply briefs. Nonetheless, for purposes of completeness, the Court addresses each one for a fulsome Rule 16 analysis.

### a. Good Faith

With regard to the first element of excusable neglect, demonstration of good faith, courts consider "a party's motives for not amending its pleadings sooner." *Little Pueblo Inn, LLC v. Willard Alonzo Stanback, P.C.,* No. 20-11233, 2024 WL 623872, at *4 (D.N.J. Apr. 8, 2024).  As noted above, Plaintiff explains that it "held off on filing the motion [with the hope that the] March 21, 2024 Settlement Conference would prove fruitful.  When that Conference failed to produce a settlement, [Plaintiff] quickly filed its amendment motion."  Reply, D.E. 84, at 4.  However, Plaintiff's alleged motives for delaying moving to amend are inconsistent with the record.  Plaintiff did not wait to amend until after the settlement conference as it claims.  Rather, Plaintiff filed its motion to amend on March 19, 2024, two days before the March 21, 2024 settlement conference. Mot. to Amend, D.E. 76.  Moreover, Plaintiff did not seek leave of the Court to extend the deadline to file the motion until after the settlement conference.  And even assuming that Plaintiff waited until after the settlement conference to amend, Plaintiff does not suggest that the settlement conference produced new information to justify the late amendment.  *See Little Pueblo Inn,* 2024 WL 623872, at *3 (citing *Ford Motor Co. v. Edgewood Prop., Inc.,* No. 06-1278, 2011 WL 1321605, at *2 (D.N.J. Apr. 4, 2011) (explaining that courts will focus on why a movant did not seek to amend sooner and consider "whether new information came to light")); *see also Sang Geoul Lee v. Won Il Park,* 720 Fed. Appx. 663, 669 (3d. Cir. 2017) (noting that a party is not diligent in waiting to amend if new information does not emerge).  Accordingly, the Court finds that Plaintiff fails to demonstrate the requisite good faith for excusable neglect.

### b. Reasonable Basis for Noncompliance

With regard to the second element of excusable neglect, a reasonable basis for noncompliance with the PTSO, Plaintiff argues that it could not have filed this motion within the

deadline set in the PTSO because it did not discover the First Report until after the deadline to amend had passed.  Reply, D.E. 84, at 3.  Plaintiff alleges that it learned of the First Report, which serves as the basis for Plaintiff's proposed amendment, while preparing for depositions in October 2023, nearly six months after the April 17, 2023 deadline to amend.  *Id.*  Plaintiff contends that it realized the position of the bypass valve on the date of loss was potentially an issue when it learned of the First Report.  *Id.* at 4.

There are two problems with Plaintiff's position.  First, Plaintiff knew, or should have known, that the position of the bypass valve on the date of loss was relevant before the April 17, 2023 deadline, if not at the outset of the litigation.  *See Providence Pediatric Medical DayCare, Inc. v. Alaigh,* No. 10-2799, 2023 WL 11331184, at *3 (D.N.J. Aug. 29, 2013) (explaining that "good cause may be lacking where a party had knowledge of the potential claim at the outset of litigation or prior to the amendment deadline, was in possession of the information which formed the basis for the potential claim prior to the deadline or where a party fails to seek an extension to the deadline.").  Indeed, the potential position of the bypass valve on the date of loss is discussed in the Second Report, which Plaintiff received in November 2021[7] and nearly 18 months prior to the amendment deadline.  Second Report, Ex. B, D.E. 57-2.  The Second Report explains that "under normal operations, the valves to the [bypass water] pipes would be shut off; therefore, no water would have flowed out of the disconnected pipes on the DOL."  Second Report, Ex. B, D.E. 57-2, at 9.  Accordingly, the Court agrees with Defendant that the Second Report provided Plaintiff with knowledge that the bypass line was a potential source of water on the date of loss, and that the position of the valve on the date of loss was crucial to Defendant's report.

---

[7] Litigation began at least ten months after Plaintiff received the Second Report in November 2021. Plaintiff filed the Earlier Action against Defendant on September 28, 2022.  Compl., Civ. No. 22-5754, D.E. 1.  Plaintiff then refiled this action on January 5, 2023.  Compl., Jan. 5, 2023, D.E. 1.

Second, to the extent Plaintiff relies on the disparate conclusions in the First and Second Reports, Plaintiff received the First Report in discovery in May 2023. Opp'n, Apr. 1, 2024, D.E. 78, at 8. Although that post-dates the April 17, 2023 deadline to amend, Plaintiff could have applied at that point for leave to amend. Despite having knowledge of the potential claim at the outset of litigation and prior to the amendment deadline, and both the First and Second Reports by May 2023, Plaintiff neither sought leave to amend, nor that the Court extend the deadline. Am. Scheduling Order, D.E. 46, at ¶ 5; Second Am. Scheduling Order, D.E. 72 at ¶ 1; *see U.S. ex rel. McDermott v. Life Source Serv., LLC,* No. 19-5360, 2023 WL 89473585, at *3 (D.N.J. Dec. 28, 2023) (explaining that this Court denied the motion to amend because "both parties were aware of the deadlines, and had even requested to move several of them, without requesting to move the Amendment Deadline"). Instead, Plaintiff waited until November 15, 2023, seven months after the deadline to amend expired, to seek leave to amend to include claims of fraudulent concealment and equitable estoppel. Plaintiff also waited until March 19, 2024 to file its motion to amend.[8] Given these delays and Plaintiff's failure to extend the deadline to amend, Plaintiff cannot establish a reasonable basis for noncompliance with the PTSO. As a result, good cause is not satisfied under Rule 16(b)(4). *See S&W Enter., LLC v. SouthTrust Bank of Ala.,* 315 F.3d 533, 536 (5th Cir. 2003) (explaining that diligence is lacking when the plaintiff does not act on "facts known to [plaintiff] from the time of its original complaint to the time it moved for leave to amend.").

### 3. Any Other Factor

Similarly, the Court is unconvinced that Plaintiff satisfies "any other factor" to establish good cause under Rule 16(b)(4). Plaintiff argues that it "exercised 'reasonable diligence' in filing

---

[8] As previously noted, this Court granted Plaintiff leave to file a motion to amend on January 31, 2024. Order, D.E. 70.

this amendment motion" because it did not receive necessary documents from Defendant until May 19, 2023 and June 27, 2023, after the PTSO deadline to amend. Reply, D.E. 84, at 4. Plaintiff further contends that it did not discover the First Report until October 2023 because it was "buried in approximately 3,000 pages of [discovery] documents." *Id.* However, courts reject "'voluminous document production during discovery' as an excuse for delay" in filing the motion to amend. *Barry v. Stryker Corp.,* No. 20-1787, 2022 WL 16948625, at *3 (D. Del. Mar. 20, 2023) (citing *Pfizer Inc. v. Sandoz Inc.,* No. 12-654, 2013 WL 5934635 (D. Del. Nov. 4, 2013). Indeed, here, Plaintiff could have sought an extension of the deadline to amend in light of the "voluminous production," but did not do so. Therefore, the Court concludes Plaintiff has failed to demonstrate that good cause exists to permit this late amendment. *See Fermin,* 2012 WL 1393074, at *5 (noting that "if a movant did have the knowledge necessary to file a motion prior to the expiration of the Court's deadline, and if the movant can provide no satisfactory explanation for the delay, the Court has the discretion to deny the motion.")*; see also Stallings ex. rel. Estate of Stallings v. IBM Corp.,* No. 08-3121, 2009, WL 2905471, at *2 (D.N.J. Sept. 8, 2009) (denying the plaintiffs' motion to amend because they "had sufficient information to state the proposed claims well in advance of the Scheduling Order deadline"); *see also Kennedy v. City of Newark,* No. 10-1405, 2011 WL 2669601, at *2 (D.N.J. July 7, 2011) ("The most common basis for finding a lack of good cause is the party's knowledge of the potential claim before the deadline to amend has passed.").

Accordingly, the Court finds Plaintiff fails to establish the good cause required under Rule 16(b)(4).

## B. Rule 15

Even assuming that Plaintiff established good cause under Rule 16(b)(4), the Court nonetheless denies Plaintiff's motion to amend under Rule 15 on the grounds of futility and undue

delay.  Pursuant to Rule 15(a)(2), a plaintiff may amend his complaint "when justice so requires."
Fed. R. Civ. P. 15(a)(2).  The Court may deny a motion to amend the pleadings where there is: (1)
undue delay; (2) bad faith or dilatory motive; (3) unfair prejudice; (4) repeated failures to cure
deficiencies; or (5) futility of amendment.  *Foman,* 371 U.S. at 182; *Grayson v. Mayview State
Hosp.,* 293 F.3d 103, 108 (3d Cir. 2002).  "The ultimate decision to grant or deny leave to amend
is a matter committed to the court's sound discretion."  *Rosenzweig v. Transworld Sys., Inc.,* No.
16-227, 2016 WL 5106995, at *2 (D.N.J. Sept. 20, 2016).  Here, Defendant argues that the Court
should deny Plaintiff's motion to amend because permitting such an amendment would be futile
and the proposed amendment is the result of undue delay.  Opp'n, D.E. 78, at 12.[9]

### 1.  Futility of the Amendment

#### a.  Equitable Estoppel

When assessing futility, courts traditionally evaluate whether the proposed amendment
would survive the legal standard of a 12(b)(6) motion.  *Napolitano v. Corbishley,* No. 20-12712,
2021 WL 3486901, at *2 (D.N.J. Aug. 9, 2011).  If the amendment "fails to state a claim upon
which relief could be granted," then it is futile and vulnerable to dismissal.  *Shane v. Fauver,* 213
F.3d 113, 115 (3d. Cir. 2000); *see Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)
(explaining that a complaint survives dismissal only when it "contain[s] sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible on its face.'"); *see also Hishon v. King
& Spalding,* 467 U.S. 69, 73 (1984) (noting that a "court may dismiss a complaint only if it is clear
that no relief could be granted under any set of facts that could be proved consistent with the
allegations"); *see also Harrison Beverage Co. v. Dribeck Importers, Inc.,* 133 F.R.D. 463, 468

---

[9] Defendant does not argue, nor can the Court find, other grounds to deny the amendment such as
bad faith, prejudice, or repeated failures to cure deficiencies.

(D.N.J. 1990) ("'Futility' of amendment is shown when the claim or defense is not accompanied by a showing of plausibility sufficient to present a triable issue.").

To determine if the amendment satisfies the Rule 12(b)(6) standard, courts must conduct a two-part analysis. *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d. Cir. 2009). First, courts separate the factual elements from the legal elements of a claim. *Id.* Well-pleaded facts must be accepted as true, but legal conclusions may be disregarded. *Id.* at 210-11; *see Ashcroft v. Iqbal,* 556 U.S. 662, 664 (2009) ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations."). All inferences from the alleged facts are viewed in the plaintiff's favor. *Phillips v. County of Allegheny,* 515 F.3d 224, 228 (3d. Cir. 2008) (citing *Worldcom, Inc. v. Graphnet, Inc.,* 343 F.3d 651, 653 (3d. Cir. 2003)). If "a complaint fails to state a claim, the [c]ourt must give [the] plaintiff the opportunity to amend her complaint, unless amendment would be futile." *Phillips,* 515 F.3d at 228 (citing *Shane,* 213 F.3d at 116).

Second, courts determine whether the alleged facts state a "plausible claim for relief." *Iqbal,* 556 U.S. at 677. This plausibility standard requires more than a sheer possibility of misconduct by the defendant; the complaint must cross the threshold from possible to plausible. Plausible claims exist when the court may reasonably infer from the complaint that the pleader is entitled to relief. In other words, the court "draw[s] on its judicial experience and common sense" to determine whether the claim is plausible on its face. *Id.* at 679; *Twombly,* 550 U.S. at 570.

To prevail on a claim of equitable estoppel, the plaintiff must show a knowing misrepresentation by another party, which the plaintiff reasonably relied upon to its detriment. *U.S. v. Asmar,* 827 F.2d 907, 912 (3d. Cir. 1987); *see also Messa v. Ohama Prop. & Cas. Ins. Co.,* 122 F. Supp. 2d 523, 532 (D.N.J. 2000); *Heckler v. Cmty. Health Serv.,* 467 U.S. 51, 59 (1984).

The movant bears the burden of proving estoppel. *Asmar,* 827 F.2d at 912.  Here, Plaintiff does not meet the burden of proving estoppel for the reasons set forth below.

### i.   First Element:  Whether Defendant Knowingly Made a Misrepresentation to Plaintiff

As to the first element, a knowing misrepresentation by another party, Plaintiff argues that Defendant knowingly made a misrepresentation by intentionally concealing the First Report to avoid paying greater insurance coverage.  Br. in Supp., D.E. 76-1, at 19.  However, Defendant contends that "it did not fail to disclose evidence material to the litigation or knowingly make any misrepresentation."  Opp'n, D.E. 78, at 14.  Rather, Defendant alleges that it made a "factual mistake in identifying the pipe in question," an isolated incident that does not amount to deliberate misrepresentation.  *Id.*  Defendant explains that, upon receiving the First Report, its claims specialist requested additional information about the fire suppression system referenced in the First Report.  Sompo's Claim Specialist Email to HEA, Ex. A, D.E. 78-1 (Oct. 22, 2021).  According to Defendant, while gathering this information, HEA realized that the First Report mistakenly identified the fire suppression pipe as the pipe at issue on the DOL.  HEA's Response Email, Ex. B, D.E. 78-2 (Oct. 25, 2021).  Defendant argues that it found that the pipe "at issue was not part of the fire suppression line but part of the bypass line."  Opp'n, D.E. 78, at 6.  Defendant shared these findings in the Second Report.  *Id.*

To meet the Rule 12(b)(6) standard, Plaintiff must provide well-pleaded facts that nudge its intentional misrepresentation claims against Defendant from possible to plausible.  *See Bornstein v. County of Monmouth,* No. 11-5336, 2015 WL 2125701 (D.N.J. May 6, 2015) (quoting *Iqbal,* 556 U.S. 662, 679 (2009)) ("A 'plausible claim for relief' means more than a showing of a mere possibility of misconduct;' it requires well-pleaded facts that would allow a court to reasonably infer 'that the defendant is liable for the misconduct alleged.'").  Assuming all

allegations set forth in the proposed amended complaint as true, the Court finds Plaintiff fails to plausibly show Defendant knowingly misrepresented the existence of the First Report.  Indeed, Plaintiff fails to provide well-pleaded facts that plausibly demonstrate Defendant knowingly made a misrepresentation.  Plaintiff merely alleges that Defendant "intentionally concealed the existence of its [First] Report … to avoid revisiting its prior coverage determination that all of [Plaintiff]'s damages arose from a 'Flood.'"  Br. in Supp., D.E. 76-1, at 19.  However, Plaintiff fails to include in its pleadings allegations of Defendant's actions that would substantiate Defendant in fact hid the First Report in an effort to deny Plaintiff expanded coverage.  As Plaintiff's claims do not go beyond conclusory allegations, the Court cannot find Plaintiff has sufficiently demonstrated a knowing misrepresentation.

The parties have engaged in discovery, exchanged thousands of documents, and Plaintiff deposed Defendant's insurance adjuster, yet Plaintiff has not provided any facts to support its claim that Defendant deliberately concealed the First Report.  Without such facts, Plaintiff asserts no more than a possibility that Defendant engaged in misconduct.  But possibility is not enough under the Rule 12(b)(6) standard.  *See Santiago,* 629 F.3d at 133 ("'[P]ossibility' is no longer the touchstone for pleading sufficiency after *Twombly* and *Iqbal.*"); *see also Iqbal,* 556 U.S. at 679 ("But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'").  Because Plaintiff fails to plead facts that plausibly support its claim that Defendant knowingly concealed the existence of the First Report, the Court finds Plaintiff fails to satisfy Rule 12(b)(6).  *See Santiago v. Warminster Tp.,* 629 F.3d 121, 133 (3d. Cir. 2010) (finding that Plaintiff's "allegations may 'get the complaint close to stating a claim, but without further factual enhancement [they] stop[] short of the line between possibility and plausibility of entitlement to

relief."); *see also Twombly,* 550 U.S. at 557 (explaining that pleading only "facts that are merely consistent with a defendant's liability is insufficient").

The Court's conclusion that the allegations in the proposed amended complaint do not transcend "possible" is buttressed by the fact that those allegations are equally consistent with another explanation: Defendant mistakenly identified the pipe.  *See Iqbal,* 556 U.S. at 680 (dismissing plaintiff's complaint because plaintiff's conspiracy allegations were "not only compatible with, but indeed more likely explained by, lawful unchoreographed free-market behavior.") (citing *Twombly,* 550 U.S. at 544); *see also In re Pressure Sensitive Labelstock Antitrust Litigation,* 566 F. Supp. 2d 363, 369 (M.D. Pa. 2008) (citing *Twombly,* 550 U.S. at 557) (holding that plaintiff's complaint should be dismissed because plaintiff's allegations were equally consistent with an agreement instead of plausibly suggesting an agreement).  For example, Defendant explains that after its claims handler, Rachel Daniels, received the First Report, she requested additional information regarding a reference in the First Report to "water from a fire suppression system" flowing into Plaintiff's basement.  Sompo's Claim Specialist Email to HEA, Ex. A, D.E. 78-1 (Oct. 22, 2021).  Upon this request for additional information, HEA realized that the First Report misidentified the pipe in question on the DOL: the bypass line, not the fire suppression system, was at issue.  *Id.*  As a result, HEA issued a revised Second Report concluding that the "force of flowing water through the vent had separated the copper bypass water lines for the domestic water system.  Under normal operations, the valves to these pipes would be shut off; therefore, no water would have flowed out of the disconnected pipes on the DOL."  Second Report, Ex. B, D.E. 57-2, at 8-9.  Based on these findings, it is at least plausible that Plaintiff did not receive a copy of the First Report because Defendant made a mistake, not because it wanted to conceal information as Plaintiff alleges.  That possibility finds further support in the fact that the

18

First Report was disclosed to Plaintiff during fact discovery in this case, albeit not nearly as promptly as Defendant should have produced it.  In other words, although Defendant should have produced it to Plaintiff earlier, the record does not establish that Defendant actively concealed it in such a way as to constitute a knowing misrepresentation.  Accordingly, the Court cannot infer that Plaintiff's claims are plausible on its face.  *See Iqbal,* 556 U.S. at 663 (explaining that "a claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

> ## ii.     Second Element:  Whether Plaintiff Reasonably Relied on Defendant's Second Report to its Detriment

As to element two, Defendant contends that Plaintiff cannot demonstrate it suffered any detriment from its reliance on any report—First or Second—because Plaintiff could and should have determined the position of the bypass valve on the date of loss.  Opp'n, D.E. 78, at 11.  However, Plaintiff contends that it never had the opportunity to confirm the position of the bypass valve on the DOL because it did not know of the First Report.  Br. in Supp., D.E. 76-1, at 4.

The Court finds that Plaintiff fails to adequately plead reasonable reliance under the Rule 12(b)(6) standard because the position of the bypass valve on the DOL constitutes knowledge exclusively within Plaintiff's control.  The record confirms that only Plaintiff had access to the damaged property, bypass line, and valve on the DOL.  Opp'n, D.E. 78, at 11.  Plaintiff cannot sleep on its own duty to inspect its premises and then place blame on Defendant.  *See Choi v. Costco Wholesale Corp.,* No. 22-3329, 2024 WL 658972 (3d Cir. Feb. 16, 2024) (citing *Troupe v. Burlington Coat Factory Warehouse Corp.,* 443 N.J. Super. 596, 601 (App. Div. 2016)) (noting that business owners have an affirmative duty to inspect their premises)).  The record shows that Defendant did not visit Plaintiff's property or inspect the bypass line and valve until at least six days after the DOL on September 7, 2021.  Opp'n, D.E. 78, at 11.  Defendant drafted the First and

Second Reports based on these subsequent property visits. *Id.* Therefore, the First and Second Reports have no bearing on the position of the bypass valve on the DOL, or at least Plaintiff's ability to conduct its own inspection following the date of loss. Further, Plaintiff does not explain how investigative results from the First and Second Reports would proffer any evidence about the position of the valve on the DOL. Because the well-pleaded facts do not permit the Court to infer the mere possibility, let alone plausibility, that Plaintiff detrimentally relied on Defendant's reports, the Court cannot conclude that the amendments survive scrutiny.

Accordingly, the Court finds that Plaintiff fails to state a claim for equitable estoppel. Therefore, Plaintiff's proposed claim is futile and fails to satisfy Rule 15(a).

### b. Fraudulent Concealment

Unlike equitable estoppel, claims alleging "fraud or mistake" are held to a heightened pleading standard under Rule 9(b). *See In re Processed Egg Prod. Antitrust Litig.,* No. 08-02002, 2011 WL 5980001, at *4, n.8 (E.D. Pa. Nov. 30, 2011) (stating that "Plaintiffs must meet the requirements of Rule 9(b) when pleading fraudulent concealment"). Parties must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Parties can also satisfy Rule 9(b) by pleading the "date, place, or time of the fraud [and] … must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Holst v. Oxman,* 290 Fed. App'x 508, 510 (3d. Cir. 2008) (citing *Lum v. Bank of Am.,* 361 F.3d 217, 224 (3d. Cir. 2004)). Although courts adopt a flexible application of Rule 9(b), conclusory allegations are insufficient. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1418 (3d. Cir. 1997). Rule 9(b) requires that Plaintiffs "accompany their legal theory with factual allegations that make their theoretically viable claim plausible." *Id.*

Fraudulent concealment applies when "the defendant causes the plaintiff to relax his vigilance or deviate from the right of inquiry." *Bohus v. Beloff,* 950 F.2d 919, 925 (3d. Cir. 1991) (quoting *Ciccarelli v. Carey Canadian Mines, Ltd.,* 757 F.2d 548, 556 (3d. Cir. 1985)).  To prevail on a fraudulent concealment claim, the movant must assert each of the following five elements: (1) the defendant had a duty to disclose information to the plaintiff; (2) the information was material; (3) the plaintiff could not reasonably have obtained access to the evidence from another source; (4) the defendant intentionally withheld, altered, or destroyed information; and (5) the plaintiff suffered harm by relying on the defendant's non-disclosure. *Steele v. Depuy Orthopaedic, Inc.,* 295 F. Supp. 2d 439, 456 (D.N.J. 2003); *see also Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 574, 602 (D.N.J. Aug. 16, 2016) (explaining that a plaintiff must establish these five elements to prove fraudulent concealment under New Jersey law); *see also Weske v. Samsung Elecs., Am., Inc.,* 52 F. Supp. 3d 599, 607 (D.N.J. 2014) (listing the same five required elements of fraudulent concealment).

As noted above, the movant must plead with specificity all five elements of fraudulent concealment under Rule 9(b)'s heightened pleading standard.  Under Rule 12(b)(6), if the movant fails to plead any of the five elements of fraudulent concealment, the Court must dismiss Plaintiff's claim.  The Court finds that Plaintiff cannot add a fraudulent concealment claim because Plaintiff fails to plead all five elements of fraudulent concealment adequately under Rule 9(b).  *See Phila. Contributionship Ins. Co. v. Am. Sec. Ins. Co.,* No. 20-14018, 2021 WL 2651229, at *4 (D.N.J. June 25, 2021) (dismissing the plaintiff's fraudulent concealment claim because the "[p]laintiff's claim fail[ed] to sufficiently allege at least the first and third elements" of fraudulent concealment); *see also Slippery Rock Area Sch. Dist. v. Tremco, Inc.,* No. 15-1020, 2016 WL 3198122 (W.D. Pa. June 9, 2016) (granting the defendants' motion to dismiss the plaintiff's fraudulent concealment

claim because the plaintiff did not plausibly allege all of the required elements of fraudulent concealment).

Examining each of the elements, the Court finds Plaintiff pleads the first and second elements with sufficient particularity under Rule 9(b).  For the first element of fraudulent concealment, the duty to disclose, Plaintiff pleads with particularity that Defendant had a duty to disclose information to Plaintiff because of the parties' fiduciary relationship as policyholder and insurer.  Br. in Supp., D.E. 76-1, at 6.  *See Griggs v. Bertram*, 88 N.J. 347, 359 (1982) (explaining that insurers are obligated to communicate to the insured any investigation results in a timely fashion).  For the second element of fraudulent concealment, material information, Plaintiff pleads with particularity that the First Report materially relates to this action because it could impact the amount of insurance coverage Plaintiff receives.  However, Plaintiff does not plead the third, fourth, and fifth elements of fraudulent concealment with sufficient particularity under Rule 9(b).  Therefore, Plaintiff's claim of fraudulent concealment is futile.

With respect to the third element, that the plaintiff could not have reasonably obtained access to the evidence from another source, Plaintiff fails to plead this element with sufficient particularity to satisfy Rule 9(b).  Instead, Plaintiff pleads that it "could not [have] reasonably foreseen Defendant's [false] represent[ation] in its Second Report."  *Id.* at 18.  Foreseeability is not an element of fraudulent concealment.  Even assuming that it was, Plaintiff does not plead any particular facts to support this element.  *Steele,* 295 F. Supp. 2d at 456; *Phila. Contributionship Ins. Co.,* 2021 WL 2651229, at *4.

Additionally, the fourth element of fraudulent concealment, that the defendant intentionally withheld, altered, or destroyed information, fails to pass muster under Rule 9(b)'s heightened pleading standard.  To establish this element, Plaintiff merely pleads that Defendant "intentionally

withheld its [First] Report … to avoid revisiting its prior coverage determination."  Br. in Supp., D.E. 76-1, at 18.  This allegation is merely conclusory.  Plaintiff fails to allege any specific facts demonstrating Defendant intentionally withheld, altered, or destroyed information. *See generally* Br. in Supp., D.E. 76-1 and Reply, D.E. 84; *see also Hollander v. Etymotic Rsch., Inc.,* 726 F. Supp. 2d 543, 551 (E.D. Pa. 2010) ("Plaintiff's allegations based on information and belief are insufficient under Rule 9(b) where Plaintiff has to set forth specific facts upon which such belief is reasonably based.").  Indeed, as noted earlier, the record allows for the possibility that Defendant did not initially share the First Report with Plaintiff because Defendant made a factual mistake, not because it wanted to withhold, alter, or destroy information.  Opp'n, D.E. 78, at 14.  Plaintiff even acknowledges in its reply that Defendant did in fact share the First Report with Plaintiff, albeit part of 3,000 pages of documents, during discovery in May 2023.  Reply, D.E. 84.  The production of this information during discovery does not support the allegation of withholding, altering, or destroying information.  Thus, the Court finds that Plaintiff inadequately pleads the fourth element of fraudulent concealment.

Plaintiff also fails to adequately plead the fifth element of fraudulent concealment, that the plaintiff suffered harm by relying on the defendant's non-disclosure, in accordance with Rule 9(b)'s pleading standard.  Plaintiff alleges that Defendant's misrepresentations about the First Report forever destroyed its ability to ascertain the position of the bypass shutoff valve on the DOL.  Br. in Supp., D.E. 76-1, at 18.  Yet, Plaintiff does not plead with particularity facts to plausibly support this contention.  Indeed, the Court is constrained to find that because the position of the shut off valve on the DOL was within the exclusive control of Plaintiff, any prejudice that Plaintiff might have suffered from Defendant not producing the First Report until May 2023 is minimal.  Without such facts, Plaintiff cannot satisfy the 9(b) pleading standard. Even assuming

Plaintiff sufficiently pled that it suffered harm by relying on Defendant's non-disclosure of the First Report, courts may only infer fraudulent intent if the plaintiff couples the misrepresentation "with proof that the [defendant] had knowledge of its falsity." *Hollander,* 726 F. Supp. 2d at 549 (quoting *Clontech Laboratories, Inc. v. Invitrogen Corp.,* 406 F.3d 1347, 1352 (Fed. Cir. 2005)). Here, Plaintiff does not plead with particularity any facts demonstrating Defendant knew the Second Report was false. Rather, Plaintiff merely asserts that Defendant drafted the Second Report in an attempt to limit the coverage owed to Plaintiff. Br. in Supp., D.E. 76-1, at 19. Consequently, Plaintiff inadequately pleads the fifth element of fraudulent concealment.

Because Plaintiff fails to plead with specificity all of the required elements of fraudulent concealment under Rule 9(b)'s heightened pleading standard, Plaintiff fails to state a claim of fraudulent concealment. Accordingly, Plaintiff's proposed claim is futile and fails to satisfy Rule 15(a).

### 2. Undue Delay

Although Plaintiff's proposed claims are futile, the Court nonetheless considers whether Plaintiff acted with undue delay in filing the amendment. Undue delay requires Courts to "focus on the plaintiffs' motives for not amending their complaint to assert this claim earlier." *Adams v. Gould, Inc.,* 739 F.2d 858, 868 (3d. Cir. 1984). While the passage of time alone does not warrant denying a motion to amend, "at some point, the delay will become 'undue,' placing an unwarranted burden on the court." *Id.*; *Cureton v. NCAA,* 252 F.3d 267, 273 (3d. Cir. 2001).

For the reasons discussed above under the Rule 16 analysis, the Court similarly finds that Plaintiff's delay in seeking to amend is undue under Rule 15. Plaintiff waited to amend its Complaint until nearly twelve months after the deadline set forth in the Pretrial Scheduling Order, and another almost eight weeks after receiving leave of the Court to file the motion. *See generally*

Mot. to Amend, D.E. 76; *see also O2 Micro Intern, Ltd. v. Monolithic Power Sys., Inc.* 467 F.3d 1355, 1366 (Fed. Cir. 2006) (explaining that parties must amend their contentions promptly after discovering new information, otherwise the "contentions requirement would be virtually meaningless"); *see also Horizon Pharma AG v. Watson Lab'y, Inc.,* No. 13-5124, 2015 WL 12850575, at *3 (D.N.J. Feb. 24, 2015) (denying defendant's motion to amend because "defendant should not have waited six weeks to file its motion to amend after being alerted to the need to amend its complaint [and instead] should have acted with more urgency.").

Moreover, the First Report was produced to it in May 2023, albeit Plaintiff did not realize it until later because the First Report was "buried in approximately 3,000 pages of [discovery] documents." Reply, D.E. 84, at 4. But Plaintiff did not seek to extend the deadline to amend despite ample opportunity to do so and despite having requested and obtained extensions of other deadlines. *See generally* Am. Scheduling Order, D.E. 46, at ¶ 5; Second Am. Scheduling Order, D.E. 72, at ¶ 1. Further, granting the amendment would threaten to materially delay the resolution of this matter. This Court has already extended discovery twice. *Id.* Granting Plaintiff's motion to amend would require the Court to extend discovery yet again, which would further prolong a resolution and require Defendant to engage in "significant new trial preparation." *Cureton,* 252 F.3d at 276; *see also Graham,* 271 F.R.D. at 123 (holding that granting "the proposed amendment would place an unwarranted burden on the Court given that the parties … [will then] insert factual and legal matters into an already over-litigated case."); *see also Cureton,* 252 F.3d at 276 (quoting *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 520 (3d. Cir. 1988)) ("It is certainly not inconceivable to [the court] that instances would occur in which the failure to make a timely motion to amend a complaint would place an unwarranted burden upon a trial court."); *see also Magness v. Walled Lake Credit Bureau, LLC,* No. 12-6586, 2014 WL 12610218, at *3 (E.D. Pa. Jan. 31, 2014)

(finding that amending the complaint would require a significant undertaking by the defendant that "would likely require months to complete—and all for a claim that Plaintiff knew or should have known that she could present three months prior to filing her motion").  Accordingly, the Court finds that Plaintiff's delay in seeking to amend is undue such that the motion should be denied.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's motion to amend, D.E. 76, is denied.  An appropriate Order accompanies this Opinion.


_s/ Michael A. Hammer_____
**UNITED STATES MAGISTRATE JUDGE**

**DATED: August 7, 2024**